IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BARRY SAWYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | **(Jury Trial Demanded)** |
| ) | |
| UNITED PARCEL SERVICE, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

COMES NOW Plaintiff Barry Sawyers ("Plaintiff") for his complaint against defendant United Parcel Service, Inc. ("Defendant") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), to remedy Defendant's unlawful retaliation and to provide appropriate relief to Plaintiff for harms caused by these discriminatory practices.

## JURISDICTION AND VENUE

2. Jurisdiction in this court arises under 42 U.S.C § 2000, et seq. and 28 U.S.C. 1331.

3. Venue is proper in this district under 28 U.S.C. § 1391 (b) in that Defendant transacts business here and the conduct complained of occurred here.

## PARTIES

4. Plaintiff is a citizen of Surry County, North Carolina, that is not under any legal disability.

5. Upon information and belief, Defendant is an Ohio corporation with a registered office in Wake County, North Carolina.

## CHRONOLOGY

6. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

7. Plaintiff has been a feeder driver for approximately 33 years for Defendant's facility located at 199 Park Plaza Drive, Winston-Salem, NC. Plaintiff has various routes he drives out of the state of North Carolina.

8. Since approximately 2015, Plaintiff has continuously been retaliated against by Defendant.

9. He has been harassed, intimidated and coerced since that time by Gary Knowles, the Extended Feeder Manager. Both Knowles and LaShay Cross, Car Supervisor, violated Article 36 and 37 of the Collective Bargaining Agreement, "CBA".

10. Mr. Sawyer's issues with Knowles began over lunch breaks. UPS forces employees to take a full hour, no matter what. On occasion, Mr. Sawyers choose not to take the full meal as other employees were not forced to do so. In August 15, Mr. Sawyers received a verbal warning from Cross for not taking a full hour lunch break. Mr. Sawyers filed a grievance against Gary Knowles for that on August 20, 2016 and the retaliation by Knowles began against Mr. Sawyers.

11. Between August 2015 and July 2016, there were verbal warnings about job performance. In or around July 2016, Knowles confronted Mr. Sawyers regarding runs he was making to Raleigh. Knowles demanded Sawyers violate DOT policies of using on duty time to do off duty activities.

12. UPS has a progressive discipline policy. Usually the discipline is verbal. It is the manager's discretion the number of warnings an employee can receive before getting a letter, then a 3-day suspension.

13. In or around September of 2016, Mr. Sawyers began driving to and from Charleston WV four days per week. On the 500 mile drive, Mr. Sawyers would sometimes stop to use the bathroom without clocking out, since it was a long run. DOT law allows you to have bathroom breaks.

14. Upon information and belief, at the direction of Knowles and in retaliation for the grievances Mr. Sawyer filed, Cross started writing up Mr. Sawyers for undocumented stops during the trips to West Virginia on at least five occasions.

15. Sometime in November 2016, Cross instructed Mr. Sawyers to clock out to go to the bathroom. As instructed, Mr. Sawyers started clocking out when stopping to use the bathroom. Within days of this instruction, Mr. Sawyers received approximately five OJS Audit for his bathroom stops.

16. Around December 9, 2016, at the instruction of Knowles, Cross called Mr. Sawyers to notify him that he was receiving a three-day suspension for not following instructions regarding stops. Mr. Sawyers explained that it was not possible for him to make these 500 mile trips without taking at least one minute stop to urinate. Mr. Sawyers was then instructed to get a doctor's note excusing him to take bathroom breaks.

17. On January 17, 2017, Mr. Sawyers went to the doctor as asked to in the December 2016 meeting. The doctor gave him a note stating Mr. Sawyers should be allowed to take breaks to urinate.

18. On January 20, 2017, Mr. Sawyers received a discharge letter from UPS in the mail. The

letter was dated for January 17, 2017, and was signed by Gary Knowles. The reason stated for Mr. Sawyers' discharge was failure to follow scheduled meal period on January 10, 2017. At the advice of the shop steward, Mr. Sawyers returned to work as normal and the discharge letter was never mentioned.

19. Mr. Sawyers worked the week of January 26, 2017. Knowles met him on the yard in Winston Salem and said he needed to speak with Mr. Sawyers and shop steward. At that point, Mr. Sawyers provided Knowles his doctor's note. The doctors note stated that the blood pressure meds Mr. Sawyers was prescribed **MAY** cause more frequent urination. Once Mr. Sawyers presented the note to Mr. Knowles, Mr. Knowles immediately took Mr. Sawyers out of service that same day. Knowles instructed Mr. Sawyers to file for short term disability.

20. Mr. Sawyers was out of work January 27th and January 31st, 2017. He was instructed that to be about to return to work, Mr. Sawyers would need the doctor to change the wording of the note. Mr. Sawyers returned to the doctor to request those changes.

21. Mr. Sawyers received a call from Knowles on February 1, 2017. He instructed Mr. Sawyers to get a new DOT physical even though his current period had not expired. Mr. Sawyers was finally allowed to return to work on February 3, 2017.

22. Mr. Sawyers filed grievances on February 4th and 10th, 2017, relating to the treatment by Knowles and Cross as well as his missed time from work.

23. Again on April 6, 2017, Mr. Sawyers received another termination letter for the same or similar allegations in retaliation for the grievances Mr. Sawyer filed.

24. Upon information and belief, Mr. Sawyers was written up and sent discharge notices for not clocking out on a one minute stop. Upon information and belief, other UPS drivers on

the same or similar route, stopped for short bathroom breaks utilizing their 15 minute break on the way back or according to how they saw fit without any adverse actions taken against them by UPS.

25. As a result of the intentional discrimination and retaliation described herein, Plaintiff was treated less favorably than other similar employees and received suspensions and discharge notifications from his employer, UPS ("adverse action").

26. Defendant's extreme and outrageous actions complained of herein gave rise to a hostile work environment.

27. Additionally, the intentional discrimination described herein caused Plaintiff to experience, insecurity, anxiety, sadness, fear, and other forms of emotional distress that Plaintiff and other witnesses can competently testify about.

28. Upon information and belief, the discriminatory adverse action described herein was willful, malicious, or the result of a reckless disregard for Plaintiff's rights under Title VII in that, *inter alia*:

    a. Defendant explicitly took the adverse action on the Plaintiff in retaliation of his continued complaints raised in his grevences:

    b. Defendant maintains a human resources department that took inadequate steps to correct previous discriminatory actions and to prevent or correct the discriminatory actions herein described; and,

    c. Such further evidence as is adduced through investigation, discovery, or at trial.

29. Plaintiff has fulfilled all conditions precedent under Title VII prior to instituting this lawsuit, as necessary, and has otherwise exhausted his administrative remedies in that he:

    a. Timely filed a charge of discrimination on the basis of Retaliation with the EEOC,

which is attached as Exhibit A and incorporated herein:

b. Received a "Notice of Right to Sue" from the EEOC, which is attached hereto as Exhibit B and is incorporated herein.

## COUNT I

30. The allegations contained in paragraphs 1 through 29 above are realleged and incorporated herein by reference.

31. At all times relevant to this Complaint, Defendant was Plaintiff's employer within the meaning of Title VII and employed more than fifteen (15) employees.

32. Defendant took adverse action against the Plaintiff on the basis of retaliation for his ongoing grievances filed regarding the hostile actions of his supervisors, Knowles and Cross.

33. Plaintiff was meeting Defendant's reasonable expectations at the time of the adverse action despite Defendant's allegations to the contrary which were retaliatory in nature for Plaintiff's ongoing complaints.

34. Upon information and belief, male employees were not subjected to the adverse actions in which Plaintiff was subjected to.

35. As a result of the Defendant's adverse action, Plaintiff has suffered, and will continue to suffer, both economic and non-economic damages, emotional distress, and other compensable damages.

36. Defendant's adverse action was intentional, deliberate, willful, malicious, reckless and/or conducted in callous disregard of Plaintiff's rights, entitling him to punitive damages under Title VII.

WHEREFORE, Plaintiff prays unto the Court for the following relief:

1. Declaratory relief, including but not limited to a declaration that Defendant's actions violate Title VII;

2. Back pay and benefits, together with interest thereon at the legal rate, in an amount to be determined at trial, which accounts for any salary increases that would have been awarded but for Defendant's discriminatory conduct:

3. Compensatory and consequential damages, including for emotional distress, mental suffering, anguish, inconvenience, loss of enjoyment of life, and other economic damages to be proven at trial;

4. Punitive damages;

5. Pre-judgment and post-judgment interest, at the highest rate available under the law;

6. Attorneys' fees and the costs of this action to the fullest extent recoverable pursuant to Title VII;

7. For a trial by jury on all issues so triable; and

8. For such other and further relief and the Court deems just and proper.

This the 20th day of December, 2018.

**OXENDINE BARNES & ASSOCIATES PLLC**

By: /s/ James A. Barnes IV
Ryan D. Oxendine – NC Bar No. 27595
James A. Barnes IV – NC Bar No. 33356
6500 Creedmoor Rd., Suite 212
Raleigh North Carolina 27613
(919) 848-4333 – Telephone
(919) 848-4707 – Facsimile
jim@oxendinebarnes.com - Email
*Attorneys for the Plaintiff*