IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| BARRY SAWYERS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV1037 |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Barry Sawyers ("Sawyers") filed the instant action against United Parcel Service, Inc. ("UPS"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964. (Compl. [Doc. #1].) This matter is before the Court on UPS's Motion to Dismiss for Failure to State a Claim ("UPS's Mot. to Dismiss") [Doc. #5]. For the reasons explained below, UPS's Motion to Dismiss is GRANTED.

I.

As alleged in the Complaint, for the past thirty-three years, Sawyers has worked for UPS. During the times and instances complained about, he has been a feeder driver for UPS's facility in Winston-Salem, North Carolina. (Compl. ¶ 7.) Sawyers alleges that since approximately 2015, he has been "harassed, intimidated and coerced" by Gary Knowles ("Knowles"), the Extended Feeder Manager. (Id. ¶¶ 8-9.) On August 15 (year not alleged), Sawyers received a verbal warning from LaShay Cross ("Cross"), Car Supervisor, for not taking the full hour required for lunch, after which Sawyers filed a grievance against Knowles on

August 20, 2016. (Id. ¶ 10.) According to Sawyers, after he filed this grievance, Knowles began retaliating against him. (Id.)

"Between August 2015 and July 2016, there were verbal warnings about job performance." (Id. ¶ 11.) "In or around July 2016," Knowles "demanded Sawyers violate DOT policies of using on duty time to do off duty activities." (Id.)

In or around September 2016, Sawyers began driving to and from Charleston, West Virginia four days a week, and occasionally would stop to use the restroom without clocking out. (Id. ¶ 13.) "Upon information and belief, at the direction of Knowles and in retaliation for the grievances Mr. Sawyers filed, Cross started writing up Mr. Sawyers for undocumented stops during trips to West Virginia on at least five occasions." (Id. ¶ 14.)

In November 2016, Cross told Sawyers to clock out to use the restroom, which he began doing. (Id. ¶ 15.) Days later, Sawyers received approximately five "OJS Audit"[1] because of his bathroom stops. (Id.)

Around December 9, 2016, Cross called Sawyers, at the direction of Knowles, to notify Sawyers he was receiving a three-day suspension for not following instructions regarding stops. (Id. ¶ 16.) After explaining he could not make 500-mile trips without stopping to urinate, Sawyers was instructed to obtain a doctor's note. (Id.) On January 17, 2017, Sawyers received a note from his doctor stating he should be allowed to take breaks to urinate. (Id. ¶ 17.) The note

---

[1] This term is not defined in the Complaint. (See Compl.)

also stated that "the blood pressure meds Mr. Sawyers was prescribed **MAY** cause more frequent urination." (Id. ¶ 19.)

On January 20, 2017, Sawyers received a discharge letter from UPS in the mail dated January 17, 2017 and signed by Knowles. (Id. ¶ 18.) The letter stated Sawyers was discharged for "failure to follow scheduled meal period on January 10, 2017." (Id.) On the advice of the shop steward, Sawyers returned to work and no one ever mentioned the letter. (Id.)

During the week of January 26, 2017, while at work, Knowles told Sawyers he needed to speak with him and the shop steward. (Id. ¶ 19.) Sawyers gave Knowles the doctor's note, and Knowles "took Mr. Sawyers out of service that same day" and told him to file for short term disability. (Id.) Sawyers was out of work January 27 and 31 and was told that in order to return to work, he needed to go to the doctor and have the wording of the note changed, which he did. (Id. ¶ 20.)

On February 1, 2017, Knowles called Sawyers and told him to get a new "DOT physical", even though his current "period" had not expired. (Id. ¶ 21.) Sawyers "was finally allowed to return to work" on February 3, 2017. (Id.)

On February 4 and 10, 2017, Sawyers filed grievances "relating to the treatment by Knowles and Cross as well as his missed time from work." (Id. ¶ 22.) On April 6, 2017, Sawyers received another termination letter "for the same or similar allegations in retaliation for grievances [he] filed." (Id. ¶ 23.)

"Upon information and belief" Sawyers was "written up and sent discharge notices for not clocking out on a one minute stop." (Id. ¶ 24.) "Upon information and belief" other UPS drivers on the same or similar route used their fifteen-minute breaks for bathroom breaks, or in whatever way "they saw fit", and no adverse actions were taken against them. (Id.) Therefore, Sawyers alleges that because he "received suspensions and discharge notifications," he was treated less favorably than other similar employees, (id. ¶ 25,) and that, "upon information and belief, male employees were not subjected to the adverse action in which Plaintiff was subjected to," (id. ¶ 34.) He alleges that UPS's "extreme and outrageous actions . . . gave rise to a hostile work environment," (id. ¶ 26,) and that the "intentional discrimination" caused him injury, (id. ¶ 27.)

After receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), (Compl. Ex. 1), Sawyers filed the instant action alleging UPS violated Title VII of the Civil Rights Act by retaliating against him for filing grievances against his supervisors. (Compl. ¶¶ 29, 32.)

In its Motion to Dismiss, UPS argues that Sawyers fails to allege a plausible retaliation claim, because he fails to allege he engaged in protected activity and fails to allege a causal link between protected activity and an adverse employment action taken against him. (Def.'s Mem. of Law. in Supp. of its Mot. to Dismiss ("UPS's Mem.") [Doc. #6] at 8-9.) Furthermore, UPS argues that any claims arising out of events that occurred prior to December 26, 2016 are time-barred because they occurred 180 days before Sawyers filed his EEOC charge. (Id. at 4.)

Sawyers does not address UPS's argument regarding timeliness but maintains he has sufficiently pled a retaliation claim. (See Pl.'s Mem. of Law in Resp. to Def.'s Mot. to Dismiss ("Sawyers' Opp'n Mem.") [Doc. #8].)

II.

"In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993) (cert. denied sub nom Am. Home Prod. Corp. v. Mylan Lab., Inc., 510 U.S. 1197 (1994)). A complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (quoting Twombly, 550 U.S. at 557). Furthermore, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. Id. (quoting Twombly, 550 U.S. at 555). While a court reviewing a motion to dismiss pursuant to Rule 12(b)(6) assumes factual allegations are true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

Claims made under Title VII that are subject to a motion to dismiss are evaluated under the same pleading standards as those articulated by the Supreme Court in Iqbal and Twombly. Woods v. City of Greensboro, 855 F.3d 639, 647 (4th Cir. 2017) ("In Iqbal, the Court made clear that this heightened standard applied to all civil actions, including claims of discrimination."). The Fourth Circuit has clarified that while a plaintiff must meet the pleading standards established by Iqbal and Twombly, he is not required to "plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." Id. at 648 (quoting McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015)). But, he must make sufficient allegations to "nudge his claims . . . across the line from conceivable to plausible." Id. at 647 (quoting Iqbal, 556 U.S. at 680).

A.

UPS first argues that "Plaintiff's allegations relating to events that occurred before December 26, 2016 (180 days before [the submission of the EEOC charge]) should be dismissed with prejudice because such claims were not subject of a timely charge of discrimination filed with the EEOC." (UPS's Mem. at 6.) Furthermore, because Sawyers did not respond to this argument, (see Sawyers' Opp'n Mem.), UPS argues "[Sawyers] has abandoned any 'retaliation' claims concerning conduct prior to December 26, 2016, and the Court should dismiss them with prejudice . . . ", (Def.'s Reply Mem. of Law in Further Supp. of its Mot. to Dismiss ("UPS's Reply Mem.") [Doc. # 9] at 2).

This district and others within the Fourth Circuit agree that failing to respond to an argument constitutes an abandonment of a claim. See, e.g., O.V. v. Durham Pub. Schs. Bd. of Educ., No. 1:17CV691, 2018 WL 2725467, at *22 (M.D.N.C. Jun. 6, 2018) ("Plaintiffs included no arguments against dismissal of their NCSES claims in their opposition memorandum. . . . Under the circumstances, the Court should deem Plaintiffs' NCSES claims abandoned and dismiss them accordingly."), adopted, 1:17CV691, 2018 WL 3370644 (M.D.N.C. July 10, 2018); Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to this argument, the plaintiff abandons any discriminatory discharge claim."); Hall v. Tyco Hall Int'l Ltd., 223 F.R.D. 219, 255 (M.D.N.C. 2004) ("In his Response Brief, Plaintiff does not dispute Tyco Electronics' contentions. Therefore, the Court deems Plaintiff to have abandoned these claims."); Mentch v. E. Sav. Bank, FSB, 949 F. Supp. 1236, 1247 (D. Md. 1997) ("I agree with ESB that Mentch has abandoned her harassment claim by failing to address that claim in her opposition to ESB's motion for summary judgment, or to offer clarification in response to ESB's reply brief.") Therefore, it is determined that Sawyers has abandoned any retaliation claims arising before December 2016[2].

---

[2] At this stage, it is not possible to determine the precise date in June that Sawyers filed the EEOC charge. (See Compl. Ex. 1.) Therefore, the general date of December 2016 is used, because ultimately it matters not, see infra at 8.

7

B.

Regardless of the timeliness of Sawyers' EEOC charge, his retaliation claim must be dismissed for failure to state a claim.[3] Sawyers alleges UPS violated Title VII of the Civil Rights Act of 1964 by unlawfully retaliating against him. (Compl. ¶¶ 1, 30-36.) Title VII "bars employers from discriminating on the basis of race, color, religion, sex or national origin." Netter v. Barnes, 908 F.3d 932, 937 (4th Cir. 2018) (internal quotations omitted) (quoting Pub. L. No. 88-352, § 703, 78 Stat. 241, 255 (1964)); 42 U.S.C. § 2000e-2. Title VII "expressly prohibits retaliation by an employer against an employee because he has opposed any practice made an unlawful employment practice by [Subchapter VI of Title 42, Chapter 21], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the same] subchapter." Netter, 908 F.3d at 937 (quoting 42 U.S.C. § 2000e-3(a)). "Title VII is not a general bad acts statute, however, and it does not prohibit private employers from retaliating against an employee based on [his] opposition to discriminatory practices that are outside the scope of Title VII." Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011). In other words, "Title VII only protects against retaliation in the limited circumstances where an employer retaliates against an employee for opposing, or participating in proceedings related to,

---

[3] The untimeliness of the EEOC charge does not affect jurisdiction over the claim, and therefore the claim can be analyzed under Rule 12(b)(6). Fulmore, 834 F. Supp. 2d at 411 (citing Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 & n.2 (4th Cir. 2009)).

discrimination on the basis of race, color, religion, sex or national origin." Dent v. Univ. of Md., C. Park, No. DKC-16-2446, 2017 WL 2537009, at *8 (D. Md. June 12, 2017).

While Sawyers is not required to plead a prima facie case of retaliation, some courts nevertheless consider the prima facie elements of the claim to help determine if a plaintiff's claims as pleaded "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Woods 855 F.3d at 647. See, e.g., Ricketts v. Logics, LLC, No. 5:15-CV-00293-D, 2016 WL 4051852, at *6 (E.D.N.C. July 27, 2016) (considering the prima facie elements of a Title VII retaliation claim in evaluating whether to grant a motion to dismiss the claim); Parker v. Ciena Corp., No. WDQ-14-4036, 2016 WL 153035, at *6 (D. Md. Jan. 12, 2016) (considering the same). Therefore, it is helpful to consider the three elements of a prima facie case of retaliation: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc).

There are two categories of protected activity under Title VII: participation and opposition. Netter, 908 F.3d at 937. Protected participation activity refers to participation in any investigation, proceeding, or hearing occurring under Title VII, and these activities receive absolute protection even when they are plainly unreasonable or irrelevant. Id.; see also Glover v. S.C. L. Enf't Div., 170 F.3d 411, 413-16 (4th Cir. 1999) (finding that statements made by the plaintiff during a

9

deposition for a Title VII action constituted protected activity even though some statements were unrelated to the Title VII claim.)

In contrast, opposition activity provides "qualified protection to a wide range of conduct." Id. Protected opposition activity is a broader category than protected participation activity and includes activities such as "staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities or complaining to superiors about suspected violations [of Title VII]." Parker, 2016 WL 153035, at *6 (internal quotations omitted) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) & Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543-44 (4th Cir. 2003)). For an employee's activity to constitute a protected opposition activity, the employee must show, first, "that [he] reasonably believed that the employment action [he] opposed constituted a Title VII violation" and, second, "that [his] conduct in opposition was reasonable." Netter, 908 F.3d at 937-38 (citing Boyer-Liberto, 786 F.3d at 282 & Laughlin, 149 F.3d at 259-60). See, e.g., Laughlin, 149 F.3d at 259-60 (concluding that the plaintiff's provision of "sensitive personnel documents" was unreasonable and therefore not protected activity).

In this case, Sawyers has not alleged he participated in any protected activity. There are no facts in the Complaint to suggest plausibly that he participated in any investigation, proceeding, or hearing occurring under Title VII. (See Compl.). Furthermore, although he does allege that he filed grievances against Knowles on August 20, 2016 for receiving verbal warnings about his lunch

10

break[4] and on February 4 and 10, 2017 related to "treatment by Knowles and Cross as well as his missed time from work," (Compl. ¶¶ 10- 22), he could not have reasonably believed that Knowles' and Cross's conduct violated Title VII because the conduct about which he complained did not concern his or anyone else's race, color, religion, sex or national origin. Instead, the alleged retaliatory treatment arose from conflicts over whether Sawyers could stop to use the restroom when he drove to West Virginia and how to use scheduled meal periods. (See id. ¶¶ 19-22.)

In opposition to UPS's Motion to Dismiss, Sawyers argues that his grievances opposed a hostile work environment, and, therefore, he engaged in protected opposition activity. (See Sawyers' Opp'n Mem. at 8-9.) To demonstrate a hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [protected class]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011) (internal quotations omitted) (citing Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010)). It is true that complaining to one's employer about what a reasonable person would believe is a hostile work environment can constitute

---

[4] While Sawyers conceded that any alleged retaliation occurring before December 2016 is time-barred, see supra at 7-8, Sawyers alleges ongoing retaliatory conduct that originated in the time-barred period and continued into the relevant time period. (See Compl. ¶¶ 10-23.)

protected opposition activity. See Boyer-Liberto, 786 F.3d at 284 ("[A]n employee is protected from retaliation for opposing an isolated incident of harassment when she reasonably believes that a hostile work environment is in progress . . . . The employee will have a reasonable belief that a hostile environment is occurring if the isolated incident is physically threatening or humiliating.").

However, here, Sawyers has alleged no facts in the Complaint to support plausibly a hostile work environment or that a reasonable person would believe a hostile work environment based on race, color, religion, sex or national origin existed or was occurring. (See generally Compl.) While Sawyers has alleged unwelcome conduct, he has not alleged that it was based on his protected status. Sawyers does allege, "Upon information and belief, male employees were not subjected to the adverse action in which Plaintiff was subjected to," (Compl. ¶ 34), but repeatedly and consistently throughout the Complaint, Sawyers refers to himself as "Mr. Sawyers", (id. ¶¶ 10-11, 13-24). Therefore, the only plausible conclusion is that Sawyers is in fact male.

Sawyers also states in his brief in opposition to UPS's Motion to Dismiss that "Plaintiff is a white male while Cross is African-American." (Sawyers' Opp'n Mem. at 8.) However, Sawyers did not allege this in his Complaint. (See Compl.) As UPS correctly points out, (UPS's Reply Mem. at 5 n.2), this new "allegation" cannot be considered. See Jeffries v. Wal-Mart Stores East, LP, No. GJH-15-473, 2016 WL 430479, at *4 (D. Md. Feb. 3, 2016) ("[A] plaintiff cannot through the use of motion briefs amend the complaint.") (internal quotations omitted) (quoting

Zachair Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997)). Even if this information could be considered, it would not change the outcome of the case, because this statement alone is not enough to support a reasonable belief that racial discrimination motivated the alleged retaliation. See, e.g., Dent, 2017 WL 2537009, at *5-*6 (finding that while the plaintiff made a few references to race and gender in her complaint, the "narrative" of her complaint offered an "obvious alternative explanation" unrelated to race or gender, and therefore "the few vague references to race and gender that Plaintiff makes are 'simply too conclusory [and] [o]nly speculation can fill the gaps in [her] complaint'") (citing McCleary-Evans, 780 F.3d at 586).

In sum, Sawyers has not alleged that he engaged in protected activity. Thus, it is unnecessary to consider the other elements of a retaliation claim, and Sawyers claim is dismissed.

III.

For the reasons stated in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant United Postal Service, Inc.'s Motion to Dismiss for Failure to State a Claim [Doc. #5] be GRANTED. A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 11th day of September, 2019.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge